PIERREPONT and others, ex'rs of Pierrepont, *vs.* BARNARD.

An agreement for the sale and purchase of land contained a covenant on the part of the purchasers that they would not cut, or suffer to be cut, for sale, any timber from the land, without the consent or approbation of the vendor first had and obtained, *in writing.* In an action of trover, by the vendor, against a person claiming under the purchasers, for a conversion of lumber made from timber growing upon the land sold; *Held* that the defendant could not be permitted to give evidence of a *parol license* from the vendor to the purchaser to cut timber upon the premises.

Growing trees are real estate, and cannot pass, except by an instrument in writing.

If the identity of trees growing upon land contracted to be sold, with a covenant by the purchaser against cutting timber, can be traced into lumber, and the contract of purchase has not been performed by the payment of the purchase price, the *title* to the property continues in the vendor; and he may reclaim it in its altered state, either from the vendee of the land, or from a person claiming title to the lumber under him.

A parol *contract* for the sale of growing trees is void, by the statute of frauds, and conveys no title to the purchaser. And so, *a fortiori,* of a parol *license,* without consideration, to cut growing trees.

Where a license is given, by the owner of land, to another, to cut a limited quantity of timber upon the land, the cutting of any more than the quantity specified is a fraud upon the owner; and he is entitled to recover the value of the overplus, in an action of trover against the person cutting the timber, or one deriving title to the same under a judgment against such person.

Estoppels are not favored in the law. An estoppel *in pais* is never allowed to be used as an instrument of fraud; but is to be resorted to solely as a means to prevent injustice—always as a shield, but never as a sword.

TROVER, brought by Wm. C. Pierrepont and others, executors of H. B. Pierrepont, deceased, to recover the value of a quantity of lumber alleged to have been taken and converted by the defendant. The cause was tried at the Oswego circuit, in June, 1845, before GRIDLEY, circuit judge. The plaintiffs' declaration was in the usual form, for a trover and conversion; and the defendant pleaded the general issue. On the trial, the plaintiffs gave in evidence a contract bearing date August 1, 1840, between William C. Pierrepont, one of the executors of Hezekiah B. Pierrepont of the first part, and John R. Wood-

worth and Hiram A. Woodworth, of the second part, for the sale by the party of the first part, and the purchase by the party of the second part, of lot No. 155 in the town of Richland, in the county of Oswego.   By this agreement the parties of the second part agreed to pay the sum of $5530 for the lot, in three equal annual instalments; and they covenanted that they would not cut, nor suffer to be cut, for sale, any timber from such lot, without the written consent of the party of the first part.   It was proved that the lumber for the conversion of which this suit was brought, was made from trees cut on the lot in question, by the Woodworths, or under their direction. The defendant claimed title to the lumber under a sale upon an execution issued against the Woodworths.   He was notified at the time, and before the sale, that the lumber belonged to the plaintiffs, and the sale was forbidden, by their agent.   The agreement for the sale of the lot to the Woodworths was executed by the plaintiff William C. Pierrepont, in pursuance of a power contained in the last will and testament of H. B. Pierrepont deceased.   By that will the said William C. Pierrepont and Henry E. Pierrepont, the sons of the testator, and two of his sons-in-law, were appointed executors; and the testator desired that the sale and settlement of his lands in the northern and northwestern parts of the state of New-York, might be sedulously and vigorously attended to and prosecuted.   And he directed that the separate signature of either of his said sons to contracts or articles of agreement for the sale of any lands situate in either of the counties of Oswego, Jefferson, &c. to actual settlers, should be sufficient; and that contracts or articles of agreement so signed, should be as valid and binding as if executed by all the executors.   Hiram A. Woodworth was offered by the defendant as a witness; and he was objected to by the plaintiffs' counsel on the ground of interest, he being one of the persons named in the contract, and who had cut and taken the timber from the land.   The objection being sustained by the circuit judge, the witness was then released by the defendant, and examined.   He testified to his having had conversations with the plaintiff W. C. Pierrepont.   The counsel

for the plaintiff objected to evidence of conversations between the witness and Pierrepont going to show a license by parol; first, on the ground that nothing but a license in writing was admissible, and secondly, because W. C. Pierrepont alone could not give such a license, to bind the other executors. The objection was overruled by the judge, and the evidence admitted, on the ground that W. C. Pierrepont had power to give such license; and that a parol license might be accompanied with other facts claimed by the defendant to exist, so as to render it valid. The counsel for the plaintiff excepted to the decision. The witness then testified that in January, 1843, he was at W. C. Pierrepont's office, and asked him if he would transfer the endorsement of $1500 upon the contract for the mill lot, to the contract for lot No. 155. Witness told him he wanted it done for the purpose of cutting timber enough to stock the mill; 5, 6 or 700,000 feet; enough to stock the mill that year, after getting through on the mill lot, upon which they had not then done cutting; that Pierrepont said he did not know but that would answer, and made the change of the endorsement, then or a few days afterwards; that he said he must have some more money, and witness paid him $300; which was endorsed on the contract for lot No. 155, February 4th, 1843; that Pierrepont did not object to witness' going on to cut, but witness could not give his words exactly; that witness supposed Pierrepont knew of his cutting timber upon lot No. 155; that witness said nothing to Pierrepont about cutting timber for any other purpose than to stock the mill; that he sold Ferguson a few logs, and made a contract with him for the cutting of timber on that lot; that Ferguson owned a mill, and witness made an arrangement with him to cut some of this lumber for witness, at his (Ferguson's) mill; that after he had sawed a part of the logs the witness sold the whole of them to him; that in the spring of 1843, some spars were cut on the premises, and witness could not say whether Pierrepont knew this. Other testimony was given, which it is not deemed necessary to refer to. The amount which the plaintiffs were entitled to recover, if any thing, was agreed upon by the counsel for the parties.

Pierrepont v. Barnard.

The judge charged the jury, among other things, that by the terms of the contract no right to cut timber was given to the Messrs. Woodworth without a license in writing, and it was with great doubt and hesitation that he had concluded to hold that any thing short of such written license would give the purchasers of the land any right to cut the timber, or to the lumber when cut and manufactured; but that he had concluded to hold otherwise, and that a parol license by William C. Pierrepont to the Messrs. Woodworth, after the making of the contract to cut timber on the land, upon which they had relied, and on the faith of which they had expended money and made the timber much more valuable in its manufactured state, would protect them in the exercise of that privilege, and that the defendant having purchased the right on executions, had the same rights with reference to the lumber as the Messrs. Woodworth, and no greater. That whenever a vendor of real estate has given an assent to the cutting of timber, and that is clearly proved, and the vendee has relied upon it, and gone on and made expenditures upon the faith of that license, and with the knowledge of the vendor, he should not be permitted afterwards to take any advantage of it by reclaiming the timber in its improved state. That William C. Pierrepont alone, and without the knowledge or assent of his co-executors, might, notwithstanding the terms of the written contract, and the restrictions contained in it in relation to cutting timber, have given a parol license to the Messrs. Woodworth to cut timber, which, if accompanied by the circumstances above mentioned, would protect them in cutting it, and would also afford protection to the defendant. That Pierrepont might, by a parol license, waive or vary the terms of the written contract as aforesaid. That if Pierrepont knew that the Woodworths were engaged in getting timber from the land, in violation of the terms of the contract, and stood by seeing them expend money in getting out and manufacturing the timber, and made no complaint, and did nothing to prevent it, the jury might infer from that, an assent or license to cut timber from the land, and such a license as would afford protection to the Woodworths and

Pierrepont *v.* Barnard.

the defendant, and prevent the plaintiffs from asserting their title to the lumber thus manufactured. If the jury believed the testimony of Hiram A. Woodworth, although they might believe that he did not prove an absolute and direct license, in terms, to cut timber, yet they were to decide whether, from what took place between Pierrepont and Woodworth, it was not understood by them that the Woodworths were to cut timber for the supply of their mill; and if so, it would afford a protection to the Messrs. Woodworth for the exercise of that privilege in relation to the lumber in question. If, however, the jury believed that Woodworth intended to practice a fraud upon Pierrepont, in procuring a license from him to cut timber, in case they should come to the conclusion that one was given, or if Woodworth afterwards abused that license, by cutting more timber than was wanted for the supply of the mill, or by permitting others to get timber from the land for other purposes than the license contemplated, then Pierrepont had a right to reverse that license at any time, and Woodworth forfeited all right under it. The jury found a verdict for the defendant; and the plaintiffs, upon a case, moved for a new trial.

*C. P. Kirkland*, for the plaintiffs. I. The parol license to cut timber, as alleged in this case, being equivalent to the conveyance of an interest in real estate, was void by the statute of frauds. If regarded as a sale of personal property, it was equally void under that statute; and this very case most strikingly illustrates the utility and necessity of that statute. (2 *R. S.* 69, § 6. *Id.* 234, § 1. *Id.* 70, § 3. 1 *Denio*, 550, *and cases there cited.* 5 *Hill*, 200. 9 *Dowl. Pr. Ca.* 846, 854. 12 *Pick.* 120 *to* 124.) II. The license, as alleged in this case, was void by the express terms of the contract. (2 *R. S.* 234, § 1. 13 *Wend.* 71. 10 *Id.* 184. 11 *Id.* 30. 1 *Taunt.* 427. 13 *Wend.* 75, 6. *Cowen & Hill's Notes*, 1480. 4 *Mass. Rep.* 491. 19 *Pick.* 275, 278. 5 *Hill*, 101, 106. 23 *Wend.* 506.) III. It was not competent for W. C. Pierrepont, alone, to give any parol license to affect the interest or title of the plaintiffs, in this property. He had no such power under the will. The license,

Pierrepont *v.* Barnard.

as alleged, was gratuitous, without consideration, and wholly beyond his power as executor. (17 *Wend.* 136.   23 *Id.* 506. 5 *Hill*, 236.   6 *John.* 39.   21 *Wend.* 178.   1 *Hill*, 111.)   IV. The judge erred in admitting any evidence as to a parol license; and more especially the evidence of Woodworth, who was incompetent. (*See cases before cited.*)   V. The contract in no manner divested the plaintiffs' *title :* besides, it was forfeited by the breach of its conditions, by the vendees.   (9 *John.* 35, 331, 358.   7 *Cowen,* 229.   23 *Wend.* 506.   17 *Id.* 136.)   VI. The charge of the judge was erroneous as to the parol license; and it was in several particulars calculated to mislead. (5 *Wend.* 191, 199.   4 *Id.* 514, 517.   11 *Id.* 83.)   VII. If there were any equitable considerations arising from Pierrepont's silence, or from the vendees' acting on the faith of any thing he said or omitted to say, these would not affect the plaintiffs' *legal* title, but must be enforced in another manner.   VIII. There was no sufficient evidence even of a parol license; and the verdict was clearly contrary to, or without, evidence.   If there was *any license,* its abuse was clearly proved.

*F. Kernan,* for the defendant.   I. The plaintiffs were *tenants in common* of the premises upon which the timber in question was cut; and as tenant in common William C. Pierrepont had power to give to the Woodworths license to cut timber upon the lot.   (*Baker* v. *Wheeler,* 8 *Wend.* 507.)   Even if there had been no contract for the sale of the lot to the Woodworths, such a license would have been valid and would have vested in the Woodworths a good title to the lumber thus cut.   II. There is nothing in the contract for sale which would invalidate a subsequent agreement between the parties which is in other respects valid.   If a valid license to cut was granted by William C. Pierrepont to the Woodworths subsequent to the contract for sale, such license cannot be rendered invalid by any thing contained in the contract for sale.   III. The condition of the contract for sale in relation to the cutting of timber upon the lot was that no timber should be cut without the consent in writing of William C. Pierrepont, (not of the plaintiffs.)   If William C.

Vol. V.                     47

Pierrepont *v.* Barnard.

Pierrepont, an owner of the property as co-tenant with the other plaintiffs, saw fit subsequently to waive or modify that condition of the contract, (a contract to which he alone was a party with the Woodworths,) such waiver was legal and valid: It is well settled that a written and even a sealed agreement may be modified by parol. (*Dearborn* v. *Cress, 7 Cowen,* 48.) IV. William C. Pierrepont having given a parol license to the Woodworths to cut timber upon the lot, and they " on the faith of such license having expended money and made the timber much more valuable in its manufactured state," and William C. Pierrepont having " stood by seeing them expend money in getting out and manufacturing the lumber and made no complaint," the plaintiffs are now concluded from denying the right of the Woodworths to cut. The acts of William C. Pierrepont were calculated to influence the conduct of the Woodworths, in a way prejudicial to their interests, unless the parol license to cut is held to be valid, and if so such acts operate as an *estoppel in pais.* This is the view of the question taken by the circuit judge in his charge to the jury : and it is undoubtedly correct. The conduct of William C. Pierrepont, when Woodworth called upon him to obtain permission to cut, and subsequently, was such as to lead the Woodworths to a line of conduct which must have been prejudicial to their interests if the plaintiffs are to be permitted to retract or repudiate the license given. And this brings the case within the definition of an estoppel *in pais,* as laid down by Judge Nelson in *The Welland Canal Company* v. *Hathaway,* (8 *Wend.* 483,) where he says, as a general rule, a party will be concluded from denying his acts or admissions which were expressly designed to influence the conduct of another, and did so influence it, and when such denial will operate to the injury of the latter. (*See also Dezell* v. *Odell,* 3 *Hill,* 215, *where the cases on the subject are reviewed by Justice Bronson.*) V. The defendant claiming under the Woodworths, is entitled to insist upon the license and subsequent conduct of William C. Pierrepont, by way of estoppel, to the same extent as the Woodworths might.

Pierrepont *v.* Barnard.

*By the Court,* GRIDLEY, J.   We think a new trial must be granted, for the errors of the judge upon the trial of the cause; and we will very briefly assign our reasons for this opinion.

The action was trover, for the conversion of a large quantity of pine lumber, which was seized by the defendant and sold upon a judgment against John R. and Hiram Woodworth. The premises on which the timber grew, from which the lumber was manufactured, was known as lot 155 in Richland, in the county of Oswego.   This lot was, on the 1st day of August, 1840, contracted by the plaintiffs to be sold to the said Woodworths, at the purchase price of $5530, payable in several instalments.   The agreement for the sale was executed by Wm. C. Pierrepont, by virtue of a power conferred on him by the last will of Hezekiah B. Pierrepont deceased.   This contract contained a clause by which the said Woodworths covenanted not to "cut or suffer to be cut, for sale, any timber from the said land, without the consent or approbation of the said party of the first part, or his attorney, first had and obtained in writing." This condition was also expressed in a memorandum endorsed on the contract, of the same date, by which it was agreed that the contract might be renewed if the interest should be kept punctually paid up.   No written permission to cut timber was ever given; and we are of the opinion—

I. That the judge erred in admitting evidence of a permission by parol.   It is true that a payment was transferred from another contract to this; but that was done at the request, and for the benefit, of the Woodworths.

It will be borne in mind that this action is not *trespass* against the party who cut the timber by the consent of one of the plaintiffs; but an action of *trover,* brought, after notice by the plaintiffs of their claim to the lumber as their *property,* and is founded on a subsequent conversion of it by the defendant. The question, therefore, is whose was the *title* to the *property* in the lumber?   The defendant's title is derived under that of the Woodworths, and can be no better than theirs.   How then did the *property* in and *title* to, the trees, out of which this lumber was made, pass to the Woodworths?   Those trees were

Pierrepont *v.* Barnard.

real estate, and could not pass, except by an instrument in writing. This proposition was thus established in *Green* v. *Armstrong*, (1 *Denio*, 550.) And while that case continues to be the law of the land, and the identity of the trees can be traced into the lumber, and the contract has not been performed by the payment of the purchase price, the *title* to the property continues in the original owner, and he may reclaim it in its altered state. We speak of the *legal title* and the rights of the parties at *law*, irrespective of any relief which might be granted by a court of equity, upon an offer to pay the purchase price, in analogy to the relief granted in the case of a parol contract for the sale of land, where the purchaser founds his claim upon a part performance of the agreement. In this class of cases relief is granted in chancery for the reason that none exists at law. So in the case at bar; the *contract* (if indeed there were one resting on a good consideration) is void by the statute of frauds, and conveyed no title to the trees; and any equitable rights which the Woodworths derived from the expenditure of labor on the timber should be asserted in a court of equity, where the court could compel them to *do* equity as the consideration of *receiving* it. Of the application of such a rule the plaintiffs need not complain ; for they would gladly relinquish their legal right to the lumber in question, if they could be paid for the land, or if the avails of the lumber should be applied, as in justice they ought to be, to reduce the amount due on the contract of sale. This, it seems to us, would be the conclusion to which the law would bring us, if this parol license were, as it has been argued by counsel, a contract founded on a consideration. But we think it is a parol license, without consideration, which makes the case much stronger against the defendant. Upon the validity and effect of this license, as affected by the statute of frauds, see the case of *Mumford* v. *Whitney*, (15 *Wend.* 380,) and particularly from page 383 to the end of the opinion, where many of the conflicting cases are ably reviewed.

Again ; by the very terms of the written contract, the parol license conferred on the Woodworths no power to cut the timber in question ; and this they well knew when they acted un-

der it. And this consideration alone removes all just ground of complaint on their part. The admission of evidence of a parol license defeats the intention of the vendor in requiring it to be in writing. The object of requiring written evidence of a license to cut timber, was to secure the plaintiffs against the consequences of mistakes and frauds and perjuries. The object was the same with that which induced the legislature to enact the statute of frauds itself; and there never was a case which more strikingly illustrates the wisdom of such a provision, than the one now under consideration. In this case, upon parol evidence of the loosest and most unsatisfactory character, the verdict of a jury has left the plaintiffs remediless for a loss of between twelve and fifteen hundred thousand feet of pine timber, constituting the principal value of the lot from which it was taken. Against such a loss they had provided an ample protection in their contract of sale. The plaintiffs foresaw that a parol license might be misunderstood; that if there were important conditions annexed to it, those might be forgotten; and if the license were only extended within particular limits, or as confined to a particular quantity, those limitations might not be borne in mind by a rapacious purchaser; and, in fine, that the most important rights of the owners of the lands, whose value consisted mainly in the timber, might lie at the mercy of mistaken or unscrupulous witnesses, and therefore they imposed the obligation on the purchasers, in the very contract of sale, to cut no timber without a written license. And we think the judge at the circuit erred in depriving them of the advantages secured by this stipulation.

II. But if we are mistaken in this view of the case, and if the ground assumed by the judge at the circuit should be held to be tenable, viz. that if a parol license were given, and relying on it the Woodworths had expended labor and money on the faith of such license, the plaintiff should be estopped from denying it, still upon the facts of this case the plaintiffs were entitled to recover nearly the entire value of the lumber converted by the defendant.

Upon the testimony of Hiram Woodworth it is certainly

doubtful whether Mr. Pierrepont ever intended to give him any definite license to cut any timber until an arrearage of some $300 or $400 was paid. But at all events there is no pretence for saying that he ever gave any license to cut more than the Woodworths requested, which was limited to a quantity sufficient to stock the mill, and was expressly declared to amount to five or six, or at most seven hundred thousand feet. Now the cutting of any more than the highest estimate thus given was a gross fraud upon the absent owners of the land. Had a request been made to cut double that amount, there is no reason to suppose that the agent would have given his consent. The Woodworths therefore had no right to cut a stick above the estimate presented to Mr. Pierrepont, without a new license. That amount, however, or nearly as much, was cut and sawed into boards, sent to market and sold, before the controversy arose about the timber in question. This timber was cut afterwards, and was over and above the quantity to which the license should be held to apply. The difference, if any, was comparatively small, and the plaintiff was undeniably entitled to recover a sum amounting to near $2000.

We think the right to this extra quantity of timber may be tested by a resort to the rules of special pleading. To the declaration we will suppose the defendant to have pleaded a parol license to the Woodworths to cut the timber in question, and a sale of the lumber on an execution in favor of the defendant against them. To this plea the plaintiffs would reply, that the parol license was void by the terms of the contract. The defendant must then rejoin, that the Woodworths *acted* on the license and expended money on the faith of it, and therefore the plaintiffs should be estopped from denying it. To this we think the plaintiffs might (irrespective of the question of a departure) successfully surrejoin, either 1st. That as to *this quantity* of timber, there was no license at all, the entire quantity to which the license applied having been previously cut; or, 2dly. That the license was procured by false and fraudulent representations, and was grossly violated and abused afterwards, and was therefore void.

Estoppels are not favored in the law ; and an estoppel *in pais* is never allowed to be used as an instrument of fraud ; but is to be resorted to solely as a means to prevent injustice—always as a shield, but never as a sword.

There are other important considerations which may be urged against the right of the defendant to retain this verdict ; but we have not time to discuss them. We are satisfied, for the reasons we have given, that there should be a new trial. And in granting it we only follow the circuit judge, who himself allowed a new trial, upon a more deliberate examination of the questions involved in the case than he could give during the course of a trial at the circuit.

A new trial is granted ; costs to abide the event.

