## PEOPLE OF THE STATE OF NEW YORK ON THE RELATION OF THE TROY UNION RAILROAD COMPANY *v.* MEALY ET AL., AS ASSESSORS, ET AL.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 63.  Submitted October 21, 1920.—Decided November 8, 1920.

In determining whether an exemption from taxes granted by a State to a local corporation was merely a privilege or amounted to a contract right protected against impairment by the Federal Constitution, this court inclines to follow the decision of the state tribunals.  P. 49.

A city joined with certain railroad corporations in forming and financing a city terminal corporation and covenanted with them all that it would apply with them for an act exempting the terminal company from taxation upon an amount exceeding its then capital stock, and that, failing such legislation, it would refund the amount of city taxes upon any greater valuation.  *Held,* that a law passed on such application, granting the exemption as to both city and county taxes, and reciting that this was in accord with the city's agreement, might properly be construed by the state courts as creating a repealable privilege rather than a contract right to the exemption—in view of the general attitude of the courts against tax exemptions, the parties' own opinion that the grant was not irrevocable, as shown in a later contract, and a power reserved by the state constitution to alter or repeal general or special laws for the formation of corporations.  P. 50.

N. Y. Laws, 1853, c. 462; 1909, c. 201; Const. 1846, Art. VIII, § 1.

224 N. Y. 187, affirmed.

THE case is stated in the opinion.

*Mr. William L. Visscher* and *Mr. Lewis E. Carr* for plaintiff in error.

*Mr. G. B. Wellington* for defendants in error.  *Mr. Thomas H. Guy* was also on the brief.

Mr. Justice Holmes delivered the opinion of the court.

T s was a proceeding in the Supreme Court of New York seeking by certiorari to review and set aside an assessment of city taxes upon the relator's property at a valuation of one million dollars; the relator contending that it had a contract by virtue of which the City of Troy and the State were limited to a valuation of $30,000 for the purposes of the tax. A referee, a single judge, the Appellate Division of the Supreme Court and the Court of Appeals successively have decided against the relator's claim, but it brings the case here on the ground that an attempt to repeal the statute upon which it bases its immunity impairs the obligation of contracts and is void. 88 Misc. (N. Y.) 649. 179 App. Div. 951. 224 N. Y. 187.

The case is this. In 1851 it was desired to establish a common terminal station and common tracks passing through a portion of the City for four railroads then having termini in Troy. An act of that year, c. 255, authorized the City and the four roads to subscribe for the stock of a new corporation to be formed for that purpose, and the City to issue bonds when secured by a mortgage of the new road to be built and by contract of the four subscribing roads. In July, 1851, the contemplated corporation was formed with a stock of $30,000; it is the relator in this suit. Then on December 3, 1852, an agreement was made by the City of Troy, the Troy Union Railroad Company, and the four other railroads, providing for carrying out the plan, and therein the City covenanted to join in an application to the Legislature of New York that the new road should be exempt from taxation upon an amount exceeding the present amount of its capital stock, and, if such law should not be passed, to refund the amount of the city taxes for any valuation exceeding said present stock. The above mentioned mortgage was executed, the four roads gave the City their covenant of indemnity and

thereafter on June 24, 1853, the desired act of the legislature was passed. Laws of 1853, c. 462. It provided that "for the purposes of taxation in the city of Troy, and in the county of Rensselaer, the property of the Troy Union Railroad Company shall be estimated and assessed (as the common council of said city of Troy, by its contract with said company, . . . agreed that the same should be) at the amount of the capital stock of said company, and no more." The above mentioned covenant of the City and this provision of the statute are the grounds upon which the relator founds its claim.

After 1853 there was a default in the payment of the interest on the bonds that had been issued by the City under the agreement and the City began an action to foreclose the mortgage given by the road to secure it. Thereupon in 1858 a new contract was made between the parties concerned in which they "for the purpose of reforming the contract [made in 1852] adopt this instead of and in place of the said contract, which is hereby annulled." The City of Troy agreed that if the Act of 1853 should be repealed at any time it would join in an application to the Legislature, as in the former contract, and covenanted again that if the desired law should not be passed it would refund as before. The other arrangements do not need mention here.

In 1886 and 1887 the Assessors of Troy assessed the Troy Union Railroad Company for $783,984 instead of the agreed $30,000, but it was held that the Company's property above $30,000 was exempt. *People ex. rel. Troy Union R. R. Co.* v. *Carter*, 52 Hun, 458. 117 N. Y. 625. In 1909, however, the Act of 1853 was repealed. Acts of 1909, c. 201. The assessment complained of in this case was made since this repeal.

The Court of Appeals held that the concession in the Act of 1853 was spontaneous and belonged to the class of *privilegia favorabilia*, as it is put in *Christ Church* v. *County*

*of Philadelphia,* 24 How. 300, and therefore was subject to repeal. This is a question upon which we should be slow to differ with a decision of the New York courts with regard to a New York corporation. It may be that too much stress was laid upon the absence of a consideration for the exemption; *Wisconsin & Michigan Ry. Co.* v. *Powers,* 191 U. S. 379, 385–387; and that a fairly strong argument could be made for interpreting the grant of 1853 as purporting to be coextensive with the contract recited in that grant, whether correctly recited or not. It may be, if it were material, that the contract of 1858 should be construed as a continuance of that of 1852 as reformed notwithstanding the habitually inaccurately used word "annulled." *United States* v. *McMullen,* 222 U. S. 460, 471. But taking into consideration the general attitude of the Courts toward claims of exemption, adverted to by the Court of Appeals, the fact that the agreement of 1858 shows that the parties concerned did not suppose that they had an irrevocable grant, and especially the fact that the constitution of New York in force in 1853, provided in Article VIII, § 1, that all general laws and special acts passed pursuant to that section might be altered or repealed, we are not prepared to say that the decision below was wrong. We are dealing, of course, only with the contract supposed to be embodied in the Act of 1853. The liability of the City on its covenant to refund taxes upon an assessment exceeding $30,000 was not passed upon below and is not before us in this case.

*Judgment affirmed.*