THE TROY UNION RAILROAD COMPANY, Appellant, *v.* THE CITY OF TROY, Respondent.*

Third Department, November 27, 1929.

* Affg. 132 Misc. 534.

*Whalen, Murphy, McNamee & Creble* [*Robert E. Whalen* and *Lewis E. Carr* of counsel], for the appellant.

*John J. Mackrell, Corporation Counsel* [*John T. Norton* of counsel], for the respondent.

WHITMYER, J. The action is for the recovery of the sum of $288,241.59, which includes the sum of $51,491.68, assessed for special franchises, with interest on different parts thereof from the several dates of payment, being the amount paid, under protest, by plaintiff to defendant as the taxes for the years 1911 to 1921, both inclusive, upon assessments levied against its real property on a valuation in excess of $30,000, the amount of its capital stock. The action is based upon defendant's covenant to refund, contained in a writing, to which it was a party. Its liability under that covenant is the only question. (*Peop e ex rel. N. Y. C. & H. R. R. R. Co.* v. *Mealey,* 224 N. Y. 187, 199; affd., *sub nom. Troy Union R. R. Co.* v. *Mealy,* 254 U. S. 47, 50.) The answer, after certain denials, sets up the separate defenses of *ultra vires* and that the covenant was unreasonable, improvident, unconscionable and wasteful of city funds and property. The trial court so decided. (132 Misc. 534.) On July 21, 1851, the defendant city and four rail-

road companies organized the plaintiff corporation, with a capital stock of $30,000, under the General Railroad Act of 1850 (Chap. 140), pursuant to chapter 255 of the Laws of 1851. Each company had a different terminus in or near the city and all operated horse-drawn cars on River street therein. The purpose of organization was to provide one railroad and one terminus for all. Plaintiff's capitalization has never been changed. On December 3, 1852, the organizers and the plaintiff entered into a contract in writing whereby, among other things, the defendant agreed, in section 17, to join in an application to the Legislature to exempt plaintiff from taxation upon a valuation exceeding its capital stock, and, if such a law was not passed, to refund to plaintiff an amount equal to the city taxes upon an amount in excess of such valuation. The State was not a party. The exemption agreed upon was provided on June 24, 1853, by chapter 462 of the Laws of 1853. Thereupon, and under the agreement, the city issued its bonds for $707,000, to be paid by the organizing companies, by each one-fourth, and plaintiff executed a mortgage upon its property and franchises to secure the bonds. There was a default. Then the city commenced a foreclosure and a new contract, made July 1, 1858, was the result. That superseded and annulled the earlier contract and was between the same parties, except that one of the original signing companies had been leased to the New York Central Railroad Company, which became a party to the new contract. The new contract, in section 11, contained a covenant similar to that in section 17 of the earlier one, with the exception that it provided that, if the exemption act should be repealed, the city would join in another application to the Legislature to accomplish the same purpose. The bonds, which were issued, were paid, except that the sum of $173,487.48, furnished by the city, remains unpaid, and the mortgage was discharged. Plaintiff's valuation was placed at $30,000, to and including 1885, when it was raised to $783,984. Later, in a certiorari proceeding involving the 1886 valuation, the original valuation was restored. Upon appeal, the General Term said that, while it might be unjust, the power to redress was in the Legislature and the Court of Appeals affirmed without opinion. (*People ex rel. Troy Union Railroad Co.* v. *Carter*, 52 Hun, 458, 461; 117 N. Y. 625.)

The exemption act was repealed by chapter 201 of the Laws of 1909. In 1911 the valuation, excepting special franchises, was placed at $1,000,000. A certiorari to review it resulted in a decision that the repealing act was valid and not an impairment of any obligation. (*Mealey Case, supra,* 88 Misc. 649–667; 179 App. Div. 951; 224 N. Y. 187, 199; 254 U. S. 47, 50.)

In matters of taxation a city exercises merely delegated powers from the State and has no jurisdiction or authority beyond. And it has no inherent power to grant exemptions from taxation. (44 C. J. §§ 4271, 4328.) These principles were recognized in the contracts. In the one of 1852 the agreement on the part of the city was merely that its common council should join in an application to the Legislature to exempt the plaintiff company from taxation upon an amount exceeding its capital stock. It was not assumed that it had the power to exempt. In the one of 1858 it was recognized that the State had that power and might repeal the exemption. It was repealed in 1909. Exemptions from taxation are not favored by law and a contract therefor is strictly interpreted. (*Yazoo & Mississippi V. R. Co.* v. *Adams*, 180 U. S. 1, 22; *City of Rochester* v. *Rochester R. Co.*, 182 N. Y. 99, 118; *People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Mealey, supra*, 197; 44 C. J. § 4330.) The plaintiff company was incorporated in 1851, under the General Railroad Act of 1850, pursuant to the act of 1851 (*supra*). The act was permissive. Prior to the passage of the exemption act, its stock had been fully subscribed, contracts had been made for the construction of the road and passenger station, the work had been largely, at least partially, performed, the mortgage as provided for had been executed, and $500,000 out of the proceeds of the sale of the bonds, issued by the city, had been wholly or partially used for the purposes agreed upon. The State was not a party to the contract, but merely assented, through the Legislature, to the exemption act and no acceptance of its provisions was necessary to make it effectual. It was decided that the act was gratuitous, without consideration, and might be repealed. (*Mealey Case, supra*, 187, 199.) The contract of 1852 was not performed, but was breached on the part of the plaintiff and the constituent companies. It was annulled by the one of 1858, which was made in place of it, without any new consideration, after the commencement of the foreclosure of the mortgage which had been given to secure the bonds.

The covenant to refund is the same in the two contracts. It is a covenant to refund to plaintiff an amount equal to the city taxes imposed upon it for any valuation exceeding its capital stock of $30,000. That was the original capitalization and has not been changed. The agreement is to refund, that is, to pay back money which ought not to have been paid. (Definition of " refund," Bouvier Law Dict. [Rawle's 3d Rev.].) The exemption was of taxes upon a valuation in excess of the amount of the capital stock. The agreement was to refund an equal amount. The exemption has been repealed, but the result attempted to be effected is the same as if the act had not been repealed. It is an attempt, indirectly,

to effect what was ended by the repealing act, which may not be ignored. (*City of New York* v. *Brooklyn, Q. C. & S. R. R. Co.,* 156 App. Div. 856, 859, 860; affd., 213 N. Y. 634; *Brooklyn, Q. C. & S. R. R. Co.* v. *City of New York,* 229 id. 260, 266; *Wadsworth* v. *Board of Supervisors,* 217 id. 484, 490, 500; *Chicago, R. I. & P. R. Co.* v. *Union Pacific R. Co.,* 47 Fed. 15, 22; Dillon Mun. Corp. [5th ed.] 1610.) The taxes were levied under the authority of the State. They have been paid. And they may not be refunded on any theory that they were not lawfully paid.

The *Carter Case* (*supra*) is not *res judicata* here. That was a certiorari to review the assessment for 1886, and the decision was that the assessment was illegal because of overvaluation under the exemption act. No other question was decided. The contracts were not involved and the court did not pass upon the power of the city to make a refund thereunder. And, although a conclusion of law was made that there was a " valuable consideration " for each contract, there was no finding of fact to support it.

Next, the contracts did not provide for the payment of the equivalent of the exemption or refund in money or services to the city. (*City of New York* v. *Brooklyn, Q. C. & S. R. R. Co., supra; Utica Water Works Co.* v. *City of Utica,* 31 Hun, 426, 431; 44 C. J. 4335.)

And there was no consideration to the city. The plaintiff company was organized only as the medium through which the incorporators might carry out their plans. Although the railroad property was acquired and mortgaged in plaintiff's name, the city furnished the necessary moneys, through the sale of its bonds, which were to be paid by the companies, and the sum of $173,487.48, with interest, remains unpaid. Moreover, the companies have always owned and operated the engines and cars. And plaintiff has never earned or paid any dividends. It has had no earnings. The companies have always taken care of the disbursements through a *pro rata* assessment. It has been and is a railroad only in name. The companies surrendered their rights in River street, thereby lessening the traffic there, but the city gave another street for their use. The change to steam power benefited the companies. And the establishment of a single passenger station, while an accommodation to the inhabitants and the traveling public, was a distinct benefit to the companies. If there was any benefit to the city, as such, in any respect, it was very trivial as against what the city gave.

And there was no new consideration, moving to the city in the 1858 contract.

The plea of *ultra vires* is available to the city and proper. The basic principle of taxation is equality, so far as practicable, and the

Tax Law (§ 3) provides that all property, not expressly exempted, shall be liable to taxation. (*People ex rel. Gould* v. *Barker*, 150 N. Y. 52, 56.) Plaintiff's property was exempted, above a certain valuation for many years. It was an arbitrary valuation limited by the amount of its capital stock. Compared with valuations for taxation of other property, it was grossly inadequate. To that extent, the burden for those years was imposed upon the remaining non-exempt property. Necessarily, what was not collected from plaintiff's property, was collected from the remaining non-exempt property. That was an injustice and was properly ended. Estoppel is invoked. That is of an equitable character. (2 Pom. Eq. Juris. [4th ed.] § 804.) Though not favored, it constitutes a remedy to promote justice, but is not permitted to accomplish a wrong or to secure an undue advantage. (*Pierrepont* v. *Barnard,* 5 Barb. 364, 374, 375; *Pelletreau* v. *Jackson,* 11 Wend. 110, 116, 117; 21 C. J. § 20.) To continue the undue advantage would be unreasonable, unjust and inequitable, and it may not be continued under the guise of an agreement to refund.

The judgment should be affirmed.

VAN KIRK, P. J., HINMAN, DAVIS and HILL, JJ., concur.

Judgment affirmed, with costs.