Chief Judge Desmond (dissenting).
I concur with Judge Burke for affirmance. The 1959 statute as interpreted and . upheld by this court is an unconstitutional impairment of petitioner’s contractual rights (U. S. Const., art. I, § 10).
The opinions of Judges Fuld and Froessel have narrowed the issues. Both assume the constitutionality of the 1956 *318 statute. They agree that the 1959 statute is not a clarification but a change of the 1956 statute. The two opinions, however, give different grounds for holding the 1959 law valid.
Judge Fuld says that any contract created by the 1956 statute could lawfully be revoked by later legislation under the provision of section 1 of article XVI of the State Constitution: “ Exemptions may be altered or repealed ”.
Judge Fboessel says that, since one Legislature cannot bind another, the 1959 modification was valid as a mere change of a tax formula.
Judge Fuld’s position is untenable unless the 1956 act was one for a tax “ exemption ”. In my opinion it clearly was not. “Exemption from taxation” means immunity or freedom from tax (see Tax Law, § 4). It means the kind of “ exemption ” described in City of Rochester v. Rochester Ry. Co. (182 N. Y. 99, 113, and cases cited there). It is impossible to consider as granting a “ tax exemption ” the 1956 law which guaranteed that the State would get from petitioner taxes no lower than petitioner had paid in 1955 and which reduced petitioner’s taxes only when and if petitioner during any year paid taxes up to and beyond the 1955 level and then only if the amount of the reduction were applied by petitioner to an approved construction project which was intended to and did produce greatly increased taxes for the State. Nor, in any real or reasonable sense, did this violate our Constitution’s prohibition (art. XVT, § 1) against the State’s “ surrendering” or “ contracting away ” its taxing power. The purpose and effect of this carefully worked out statutory scheme was to increase the State’s tax receipts from harness tracks by means of increasing attendance and betting at the tracks.
Answering Judge Fboessel’s position, it cannot be literally true that “one Legislature cannot bind another” so as to create an irrevocable contract, otherwise there never would have been a Trustees of Dartmouth Coll. v. Woodward case (4 Wheat. [17 U. S.] 518). Contractual rights created by legislative charter or statute cannot be impaired unless the State has in advance reserved power so to impair them. There were no such reservations here.
As establishing that the 1956 statute created, when petitioner acted on it, a constitutionally irrevocable contract, I cite People *319 ex rel. New York Cent. & H. R. R. R. Co. v. Mealey (224 N. Y. 187, 196-197, affd. sub nom. Troy Union R. R. Co. v. Mealy, 254 U. S. 47); American Smelting Co. v. Colorado (204 U. S. 103); New York Elec. Lines v. Empire City Subway (235 U. S. 179, 193); People ex rel. Davis v. Sturtevant (9 N. Y. 263, 273); People v. O’Brien (111 N. Y. 1); Suburban R. T. Co. v. Mayor of City of New York (128 N. Y. 510), and many other authorities.
Proof that the 1956 statutory plan Avas intended by the Legislature to create contractual rights is found in a provision inserted in 1956 and noAV part of the second sentence of section 40 of the Pari-Mutuel Revenue Law. Prior to 1956 the Harness Racing Commission Avas authorized to grant to a harness track corporation a license running for not more than a calendar year. In 1956, when the “ construction fund ” provisions were added, the statute was amended to say that when the Commission approves a capital improvement it “ shall, as an inducement for or in recognition of the making of such capital improvement, grant a capital improvement license, which may be conditioned on the completion of the capital improvement if not yet made ’ ’ for a period of not more than 25 years but in no event for a period longer than is necessary to amortize any loan for a capital improvement, there being a further provision that such capital improvement license shall automatically expire when the loan of funds upon which it has been issued has been paid off by the licensee. This was an express recognition by the State of the possibility that a capital improvement might be paid for out of borrowings and a direction that the track should have a license to run until the loan should be paid off by tax savings made available to petitioner by the 1956 ‘ ‘ construction fund ” formula.
If this 1956 statute and petitioner’s action in reliance thereon did not constitute an inviolable contract, it must be because the courts are abolishing an ancient rule of constitutional law which was founded on good morals and fair play and which has heretofore forbade the State’s breaching such contracts.
I vote for affirmance.