*1050 OPINION OF THE COURT
Edward M. Horey, J.
There is presented to the court an order to be entered on a stipulation purporting to resolve five years of tax assessments levied by the Town of Great Valley, New York, against 69 condominiums known generally and collectively as Snowpine Village.
The years of assessment which are in issue are 1985, 1986, 1987, 1988 and 1989.
The stipulation entered into between the township and the owners seeks to resolve current tax certiorari proceedings for the five years of 1985 through 1989 inclusive by an agreement which prospectively fixes an assessment for each of the 69 condominiums for the present year (1989) and five ensuing years, viz., the years 1990, 1991, 1992, 1993 and 1994. It is of note that the prospective assessments for the years 1989 through 1994 represent approximately 45% of the prior assessments for the year 1988. In sum, for the five-year period envisioned by the agreement the respective taxpayers’ assessments would be reduced by approximately 55% of the current assessments.
The stipulation states that the reason for the prospective reduction of assessments is the "inability of the respondent [township] and/or other taxing authority to pay cash refunds.” The agreement of stipulation also states that the "parties agree that petitioners’ properties were overassessed on the respondent’s 1985, 1986, 1987, 1988 and 1989 tax rolls.”
The means to resolve issues of overassessment continually plagues our municipalities and other taxing entities. Having rendered and fixed assessments for a particular year and thereafter collected a tax upon such assessment to cover the items of expenditure included in the budget, the municipalities repeatedly find themselves in a position of having spent tax moneys which it subsequently develops should not have been collected in the first place. How redress is to be made to the offended taxpayer is the problem. Financing by bonding or other debt-incurring practices to provide for a refund is expensive and at times impossible in those instances where the municipality has already reached its maximum constitutional indebtedness. As a consequence, municipalities turn to compromises which typically envision reduction of future taxes by various means of reduced prospective assessments. Such an agreement is at bar.
*1051 The difficulty of reaching an agreement of compromise providing for future limitation on assessments and in turn on taxes is the statutory obligation imposed upon an assessor, viz., "[y]ear by year an assessor must use his own judgment and must verify the [tax] roll (Tax Law § 28).” (People ex rel. Hilton v Fahrenkopf 279 NY 49, 53 [1938] [italics added] quoted and followed in Matter of North Country Sav. Bank v Nunziato, 123 Misc 2d 502, 506 [Sup Ct, Albany County 1984, Conway, J.].) In addition and of greater import are the provisions of NY Constitution, article XVI, § 1 which provide that: "The power of taxation shall never be surrendered, suspended or contracted away, except as to securities issued for public purposes pursuant to law.” (Italics added.)
To avoid violating the noted statutory independence granted and imposed upon a tax assessor and the constitutional limitation prohibiting the contracting away of the taxing power, and still provide for a compromise by means of prospective reduction or limitation of assessments has taxed the legal mind. In truth, this area of the law has become a field of legal specialization. It has spawned experts in the craft of attempting to avoid the legal and constitutional pitfalls while still designing means of limiting prospective tax assessments. The drafting of such agreements has become a veritable art form. The agreement of stipulation in issue is an example.
The technique typically employed is an agreement of settlement of current tax proceedings with a promise by the taxpayer that he will settle all outstanding litigation and will promise not to initiate any new proceedings providing always that the taxing authority maintains assessments for a stated number of years at a fixed figure. Typically the figure selected is a marked reduction of the current assessment.
It is argued that under such a settlement agreement the taxing authority does not violate any law or constitutional provision in that the taxing authority promises nothing. It does not technically agree to any prospective assessments. The conditional promise not to sue remains in force and binding on the taxpayer.
The consequence of the taxing authority deviating from the prospective reduced assessments is well stated in Review and Reduction of Real Property Assessments in New York by Lee and LeForestier (at 532): "If the municipality, the very next year, does raise the assessment, deeming in its judgment that the value of the property is then more than the amount *1052 stipulated in the settlement of the prior proceeding, it can do so. Nothing in the agreement prevents that exercise of its sovereign power. Such an action would not be in derogation of the terms of the agreement. It would merely release the petitioner from the covenant not to sue.”
Thus, the scenario that is set by the agreement is analogous to a house built on stilts. While the municipality is legally free to remove the underpinning by increasing assessments, the result is foretold — a house of lawsuits will come crashing down. Since in the instant case it was an admitted overcharge of assessments that led to the stipulation, the results of the ensuing lawsuits may fairly well be predicted.
If instead of the imposition of a condition that certain reduced assessments must be maintained by the taxing authority as a condition for the promise of the taxpayer not to sue, there is instead an outright promise on the part of the taxing authority that it will maintain assessments at a reduced assessment, our courts have denounced such a promise as one that is ultra vires on the part of the municipality and thus illegal and unenforceable. (Troy Union R. R. Co. v City of Troy, 227 App Div 351 [3d Dept 1929], affd 253 NY 597; Matter of North Country Sav. Bank v Nunziato, 123 Misc 2d 502 [Sup Ct, Albany County 1984], supra; to same effect is 5 Opns Counsel SBEA No. 23 [1975].) The difference then is between a condition that reduced assessments be maintained and a promise to maintain them.
Quaere: is such a difference one which should be judicially countenanced? Decisional law on this critical issue is scarce. People ex rel. Beard’s Erie Basin v Sexton (247 App Div 754 [2d Dept 1936]) stated that such agreements were not be be countenanced. Involved there was a private agreement to abide by the amounts of the assessments in amounts as fixed for the succeeding year. The court stated "[s]uch an agreement purports to substitute as the basis for assessment purposes a private understanding based upon the exigencies of a given situation as they appeal to the respective parties for and in the place of the actual value of the property, and so is illegal and void” (supra, at 755).
In their excellent text of Review and Reduction of Real Property Assessments in New York, the authors Lee and LeForestier point out that People ex rel. Beard’s Erie Basin v Sexton (supra) is the one authority to the effect that such an agreement is illegal. Such. authors state that they are in *1053 disagreement with the quoted statement of law of People ex rel. Beard’s Erie Basin v Sexton and term the statement and law merely obiter dicta. The authors argue that a municipality has the unquestioned authority to compromise a tax certiorari proceeding. From that premise the authors advance the proposition that a contract conditioned on a taxing authority’s limiting prospective assessments in exchange for a taxpayer’s promise not to sue is valid. "In exchange for the covenant not to sue from the taxpayer, the municipality can agree to prospective assessments at a certain level, or to a phased-in assessment reduction from the present assessment over future years. Such a stipulated agreement is treated entirely separate and apart from the stipulation which settles proceedings that are already under litigation, since the trial court may not approve and review the prospective covenants, nor mention them in its final order and judgment. Such prospective agreements are grounded in good faith, and not legal enforceability, and they are therefore not entertained by the courts due to public policy considerations” (op. cit., at 528-529).
What Messers Lee and LeForestier urge then is that the agreement of settlement of outstanding litigation be treated separate and apart from the conditional agreement referrable to future assessments. They acknowledge that the agreement referrable to future assessments is not legally enforceable. Its future effectiveness lies in the good faith of the taxing authority maintaining the reduced assessments. The authors caution that the order settling outstanding litigation not mention the agreement concerning future assessments in its order or judgment settling the litigation because the courts will not entertain them due to public policy considerations.
This court is in fundamental disagreement with Messers Lee and LeForestier and with the attorneys for the township and the taxpayers in the case at bar who make the same argument. On analysis what they posit to be valid is an agreement under which the taxing authority voluntarily maintain in force and effect a condition of reduced assessments that violates the law. They distinguish that from an agreement under which the taxing authority promises to maintain reduced assessments that violates the law. In either instance, there is a violation of a statutorily imposed duty in that both the condition and the promise seek to impair and hamstring the independent judgment of the assessor. In addition, both seek to contract away the power of taxation. Whatever may be said for the practicalness and utilitarian aspects *1054 of such an agreement, it is to this Judge an exercise in sophistry to maintain that the one is legal and the other illegal.
The tenuousness of Messers Lee and LeForestier’s proposition is further weakened by its cautionary urging that the agreement relating to future assessments be kept from the judgment and order submitted to the court. This they caution is for the reason that the courts will strike them down due to public policy considerations. So in the final analysis the authors urge or at least support a proposition in which the taxing authority enter into an agreement which concededly cannot be legally enforced and then hide the fact from the courts when seeking to have the court approve an order of settlement of which the agreement violative of public policy is a concomitant part. That such agreement is a concomitant part is crystal clear to this court. For who can argue that without the conditional agreement to maintain reduced assessments, there would be a settlement? No matter how cleverly phrased, the essence of the agreement is that reduced future assessments are to be exchanged for admittedly due tax refunds. The device employed to accomplish this end is the conditional forbearance of annual assessments of real property imposed as a statutory duty on the tax assessor. This court holds such a devise illegal because it necessitates for its accomplishment something which is illegal. It is this holding that is the essence of the decision reached.
It is well stated in 15 Williston, Contracts § 1749 (3d ed): "Even though a bargain does not directly require any unlawful or improper act for its performance, if its tendency is to encourage or hold out a reward for a result that can be brought about only by an unlawful act, the bargain is opposed to public policy.” This court holds the agreement at bar to be just such an agreement. Accordingly, this court holds it void as against the public policy of this State.
Note is pointedly made at this point that the settlement agreement is before this court. It is annexed and made a part of the proposed order. Thus, the practice, albeit in the opinion of this court an improper practice, suggested by Messers Lee and LeForestier to completely refrain from any mention of the agreement in the proposed order or judgment has not been followed by the attorneys for the township and the taxpayers.
To the argument that the parties have a legal right to settle their differences, this court would point out that while it is *1055 true that parties are generally free to enter into all types and manners of stipulations, there are exceptions. It is an accepted rule that parties may not enter into stipulations which are "unreasonable” or "against good morals” or against "sound . public policy”. (Matter of New York, Lackawanna & W. R. R. Co., 98 NY 447, 453; more recently Nishman v De Marco, 76 AD2d 360, 368 [2d Dept 1980].) In Brooklyn Bank v O’Neil (324 US 697, 704) affirming the decision of our Court of Appeals reported at 293 NY 666, it was stated by the Supreme Court of the United States that "a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy.”
It has also been held that parties do not have a right to waive in advance the provisions of a statute. (Estro Chem. Co. v Falk, 303 NY 83, 87.) The condition contained in the settlement agreement at bar calling for the maintenance of reduced assessments by the township for the ensuing years of 1989 through 1994 is a waiver in advance of the constitutional right and duty of the township to collect taxes for those years and of the right and duty of the assessor to make annual assessments of property in each of those years. This is an additional reason for the invalidity of the stipulation.
What is easily lost in a discussion of the type of settlement presented to the court is the impact of the agreement upon the other taxpayers of the township. It is beyond argument that any moneys required for budgeted items which are not paid by one taxpayer must be paid for by other taxpayers. It is to ensure a fair and equitable distribution of the onus of taxation that the Legislature has required the annual assessment of property. Agreements of the type presented- here destroy this legislative scheme.
In the case at bar this court is asked to sign an order that the township cause its assessment rolls to indicate the agreed assessments for the next five years. "Ordered and adjudged that the Respondent shall cause or cause to be made upon the proper books and records of the Respondent the entries, changes and corrections necessary to conform the assessments of said property to the corrected and reduced violations listed in the settlement agreement.” The court is also asked to sign an order that would require the township to compute the taxes for the years 1989 through 1994 upon the settled assessments. "Ordered and adjudged, the appropriate taxing authorities, including the town, the County of Cattaraugus and the *1056 Ellicottville Central School District, compute their respective taxes based upon the settled assessments.”
What is proposed is clearly a request that this court specifically order the taxing authorities consisting of the township, county and school district to take action which is contrary to law.
In addition the stipulation agreement provides that the taxpayers "shall have the right to seek specific performance of the terms of this settlement agreement.” Thus, this court is not only asked to judicially bless the terms of this illegal agreement as being "reasonable” and "just” and "in the best interest of the respondent” township, but the court also is asked to give judicial approval to future specific enforcement of such terms.
It is the inclusion of the settlement agreement as a part and parcel of the proposed order that distinguishes the instant application from those presented in Italiano v Srogi (89 AD2d 1054 [4th Dept 1982]) and Matter of Sunnycrest Apts. v Srogi (100 AD2d 730 [4th Dept 1984]). While in over-all agreement with the decision reached here, in both cases there the court merely ordered struck from the proposed order those paragraphs which violated the tax assessment procedures. In neither case does it appear that there was presented to the court the terms of a settlement agreement; nor does it appear that in either instance the court was called upon to pass on the validity of the terms of such an agreement. Such is not the case at bar. Here the agreement between the township and the taxpayers requires the submission of the agreement to the court for approval as a condition of its effectiveness.
To those who would argue that a practice of reducing future assessments is a proper solution to redress past overassessments, because such practice is cheaper and easier than debt financing or other means, there is but one answer. They should have the Legislature change the Constitution and the laws which pertain to such type of redress. Currently it is illegal as contrary to public policy.
This court declines to approve the terms of the settlement and accordingly refuses to sign the proposed order for the reasons stated.