Sidney A. Fine, J.
This is a proceeding, pursuant to article 78 of the Civil Practice Act, (1) to set aside a determination of the Tax Commission of the City of New York which denied petitioners’ application for tax exemption and tax abatement, pursuant to section J41-2.4 of the New York City Administrative Code, and (2) to direct respondents, the Mayor, the President of the City Council, and the members of the Tax Commission, to grant tax exemption and tax abatement to petitioners. Respondents, by cross motion, seek dismissal of the petition on the ground (1) that the exclusive remedy available to petitioners is that provided in section 290 et seq. of the Tax Law, sections 163-166 of the New York City Charter, and section 166-1.0 of the Administrative Code; (2) that the petition fails to state a good cause of action for the relief sought; and (3) that the decision of the Tax Commission is not a final order.
The petition alleges that petitioners are presently the owners of a Class A multiple dwelling in the Borough of Manhattan; that on July 12, 1956, section J41-2.4 of the Administrative Code was enacted into law pursuant to an enabling act of the State Legislature (Tax Law, § 5-h); that at the time of said enactment, the building was not centrally heated and contained inadequate, obsolete sanitary facilities and fire and health hazards; that said section J41-2.4 provided that “ Any increase in assessed valuation resulting from alterations and improvements to existing dwellings to eliminate presently existing unhealthy or dangerous conditions in any existing dwelling or to replace inadequate and obsolete sanitary facilities in any such dwelling, any of which present fire or health hazards, or to provide central or other appropriate and approved heating # * * shall be exempt from taxation for local purposes for a period of twelve years after the taxable status date immediately following the completion of the alterations and improvements, to the extent that such increase in assessed valuation result from the reasonable cost of such alteration and improvements, providing that construction is started after March first, nineteen hundred fifty-five and completed before December thirty-first, nineteen hundred fifty-nine”; that said section further provided that1 ‘ The taxes upon such property, including *709 the land, shall be abated and reduced by an amount equal to eight and one-dhird percentum of the reasonable cost of such alterations and improvements each year for a period of nine years commencing with the first tax bill for the first tax year in which the exemption herein provided is effective ’ ’; that, in reliance upon these statutory provisions, petitioners purchased the property and, pursuant to plans approved by the Department of Buildings, altered the building by removing the inadequate and obsolete sanitary facilities and replacing them with adequate plumbing, and by removing and correcting the fire and health hazards and installing central heating; and that petitioners obtained certificates, as required by the statute, from the City Planning Commission and the Department of Buildings, the latter certifying, among other things, the reasonable cost of the alterations and improvements. It is further alleged that petitioners thereafter, on March 10, 1959, filed an application with the Tax Commission for tax exemption and tax abatement, but that their application was denied on the ground that the building was not subject to the provisions of the State Residential Rent Law (L. 1946, ch. 274, as amd.) and was, therefore, not entitled to tax exemption or tax abatement by reason of a 1959 amendment (Local Law 14 of 1959 of City of New York) of section J41-2.4 of the Administrative Code, which withdrew the benefits of that section from uncontrolled or decontrolled dwellings.
The petition goes on to allege that the 1959 amendment is void (1) because it was passed without compliance with section 37 of the New York City Charter, which provides that “No local law shall be passed until it shall have been in its final form and upon the desks of the councilmen at least seven calendar days, exclusive of Sundays, prior to its final passage ’ ’, and (2) because it is unconstitutional, in that it impairs the obligations of the ‘ ‘ contract ’ ’ between petitioners and the city alleged to have arisen from petitioners’ “ acceptance ”, by performing the alterations and improvements, of the 1 ‘ offer ’ ’ of tax exemption and tax abatement, embodied in section J41-2.4 (supra) without any exclusion of uncontrolled or decontrolled dwellings.
Respondents’ contention that petitioners may not review the determination of the Tax Commission by an article 78 proceeding ignores or disregards the fact that there is no statutory provision affording petitioners any other remedy for a denial of tax abatement. Section 165 of the charter provides for a final determination by the Tax Commission ‘ ‘ upon any applica *710 tion for the correction of an assessment ’ ’, while section 166 distinguishes between a proceeding to review such a determination and one to review a final determination not involving the correctness of an assessment. The remedy provided for in section 290 et seq. of the Tax Law, sections 163 to 166 of the charter, and section 166-1.0 of the Administrative Code relates only to proceedings involving the correctness of an assessment and does not extend to proceedings for tax abatement. The latter do not involve in the slightest the question of the correctness of the assessed amount of the property. In People ex rel. Ambroad Equities v. Miller (289 N. Y. 339) the court said (p. 342): “In certiorari proceedings only the question whether the tax assessment is valid can be litigated.” Since no other• remedy is provided for reviewing a denial of an application for tax abatement, an article 78 proceeding will lie (see Cooper Union v. City of New York, 272 App. Div. 438, affd. 298 N. Y. 578). As the petitioners’ proceeding is, therefore, properly brought insofar as it seeks tax abatement, it is unnecessary to determine whether the proceeding is also maintainable, concurrently with the remedy formerly denominated certiorari, in order to obtain tax exemption. Where the question to be decided is purely one of law (in this case, the validity of the 1959 amendment) and does not involve valuation of the real property, a factual question, it may well be, as petitioners contend, that article 78 of the Civil Practice Act, affords a concurrent remedy. (See Dun & Bradstreet, Inc., v. City of New York, 276 N. Y. 198, 206, permitting an action for a declaratory judgment as to the legality of a tax notwithstanding the existence of a different form of statutory review; see, also, Matter of State Ins. Fund v. Boyland, 282 App. Div. 516, 519-520, affd. 309 N. Y. 1009.) The remedy of certiorari is intended to be the exclusive remedy for situations involving a factual issue as to the correctness of the amount of the assessment, rather than for the determination of a pure question of law, free from any issues of fact.
We turn now to the claim of petitioners that the 1959 amendment is null and void for failure to comply with section 37 of the charter. The petition here alleges (par. 16) that after the return of the bill, embodying the amendment in its final form, from the printer on December 17, 1958, “it was for the first time placed upon the desks of the Councilmen ” (italics supplied). This is an allegation of a factual nature and it must be deemed true for the purposes of the respondents’ cross motion to dismiss the petition as insufficient. If December 17, *711 1958 was the first day the bill was placed on the desks of the councilmen, it is clear that it was not on their desks “ at least seven calendar days, exclusive of Sundays, prior to its final passage ”, which occurred on December 23, 1958. This is so even if both December 17 and December 23 are included in the count, for that would amount to seven days, one of which was a Sunday and therefore to be excluded from the count. Respondents’ brief implies that the bill, in unprinted form, was on the desks of the councilmen from December 16, the date of its introduction, but this is contrary to the allegation of the petition above referred to, which must be deemed true at this time. Respondents also urge that the official journal of the Council may not be impeached, but there is nothing before the court to establish that the journal entries show that the bill was on the desks of the councilmen at least seven days, exclusive of Sundays, prior to its passage.
The present application is one of 27 of the same nature made by owners of various properties. Three of the other petitions also contain the allegation that December 17, 1958 was “ the first time ” the bill for the proposed amendment was placed on the desks of the councilmen. The other 23 petitions allege that the bill was introduced on December 16, that it was sent to the printer the same day; that it was returned to the Council on December 17, 1 ‘ at which time it was placed upon the desks of the councilmen of the City Council.” Although these 23 petitions do not allege expressly that December 17 was the first day it was placed upon the desks of the councilmen, that is the fair meaning of the language of the petitions. On a motion to dismiss for alleged insufficiency, the attacked pleading must be construed liberally in favor of the pleader. With this well-established rule of construction in mind, the court is of the opinion that the 23 petitions sufficiently allege that the bill was not on the desks of the councilmen at least seven days, exclusive of Sundays, prior to its passage. It is accordingly unnecessary to determine whether, if the bill had been placed on the desks of the councilmen on December 16, the charter requirement of seven days, exclusive of Sundays, would have been duly complied with. The necessary seven days could, in that contingency, be achieved only by including both December 16 and December 23, which would seem to be contrary to section 20 of the General Construction Law (see, also, Matter of Village of Lynbrook, 142 App. Div. 487, 490). The court accordingly holds that all 27 petitions sufficiently allege, for pleading purposes, facts establishing that the 1959 amendment was passed without compliance with section 37 of the charter.
*712 There remains for consideration the question of whether the amendment, assuming it was validly adopted, is constitutional as to petitioners, who altered and improved their property prior to the amendment. Determination of the question of constitutionality is not strictly necessary, it is true, in view of the fact that the cross motion must he denied in any event, because the allegations of noncompliance with section 37 of the charter make out a good cause of action. However, the question of constitutionality is the one principally stressed in the briefs and is of great importance, in view of the strong possibility that the amendment may be readopted in compliance with section 37. The court will, accordingly, express its views on the constitutional question presented to it for determination.
It is well settled that statutes granting tax exemption and similar statutes are, in the absence of a contract to continue the exemptions or other privileges granted, revocable at the will of the Legislature, and this is so notwithstanding the fact that persons may have performed acts or expended money in reliance upon the statutes prior to their repeal or modification. The rule is stated as follows in Cooley’s authoritative Law of Taxation (4th ed., Yol. 2), in section 701: “ If the grant of an exemption does not constitute a contract it is revocable by the power which made the grant. It is perfectly well settled that an exemption granted from motives of state policy merely, and where the state and the citizen do not meet on a basis of bargain and consideration, is to be deemed expressive only of the present will of the state on the subject; and the law granting it, like laws in general, is subject to modification or repeal in the legislative discretion, and it is immaterial that while it continued in force persons have acted in reliance upon it. * * * a state may, at its pleasure, withdraw an exemption which is a mere gratuity possessing no element of a contract, even though the corporation may have incurred expense on the faith thereof. ’ ’ (Citing in n. Grand Lodge F. & A. Masons of Louisiana v. City of New Orleans, 166 U. S. 143; emphasis mine.) The cases supporting the language of the text are legion. Citation of a few will suffice: People ex rel. Cunningham v. Roper (35 N. Y. 629, 635); City of Rochester v. Rochester Ry. Co. (182 N. Y. 99); People ex rel. Gallatin Nat. Bank v. Commissioners (67 N. Y. 516, 519); Pratt Inst. v. City of New York (183 N. Y. 151); Salt Co. v. East Saginaw (13 Wall. [80 U. S.] 373); Wisconsin & Michigan Ry. Co. v. Powers (191 U. S. 379).
Instances where it has been held that contracts with the State or municipality existed which prevented the valid modification *713 or repeal of tax exemptions therein granted occur where bonds or scrip are issued as nontaxable (Cooley, op. cit., p. 1477; McGee v. Mathis, 71 U. S. 143 [cited in petitioners’ brief]). Another example of a contractual right to the continuation of tax exemption occurs when the State awards a charter to a private corporation in which, for a consideration, it agrees to an irrevocable tax exemption (Cooley, op. cit., p. 1474).
The question to be determined here is whether the City of New York may be held to have contracted with those who altered and improved substandard dwellings, in reliance upon the tax exemption and tax abatement statute passed in 1956, for the continuation of such tax exemption and abatement without change. The authorities appear to be to the contrary. In the leading case of People v. Roper (supra) the Legislature had granted tax exemption in return for service in the militia. Although, it is true, the Court of Appeals in that case found that service in the militia did not constitute a valid consideration, because the State had the right to command such service, the court held that (p. 631) “ the provision in question is to be construed * * * not as a private contract between the State and the citizen.” The court added (p. 635): “ It is true that the State may, if it will, within the limits prescribed in its organic law, enter into private contracts with its citizens, by which the people and the government are forever bound; but we are never to construe a general statute as embracing such a purpose, when it is obvious that it was designed only as an expression of the legislative will for the time being, in a matter of mere municipal regulation. When this is the object of the law, those who act upon the faith of its provisions, do so with a reasonable assurance, indeed, that it will not be modified or repealed, until such action shall be required, in the judgment of the legislature, by the general interest of the community; but with notice that it is subject to revocation by the State, whenever the public exigencies may demand. Such a repeal involves no breach of obligation, in the sense of the federal Constitution; for the faith reposed is on the stability of a general law, and not on the efficacy of a legal contract.” (Italics supplied.) In Wisconsin & Michigan Ry. Co. v. Powers (supra) a general tax law of Michigan, after levying a tax on railroads, provided (p. 384) that it was not to apply to any railroad “hereafter building and operating a line of railroad ” within a specified part of the State 1 ‘ until the same has been operated for the full period of ten years, unless the gross earnings shall equal four thousand dollars per mile ”. In reliance upon said statute, *714 the plaintiff constructed a railroad in the specified area. Its gross earnings had never equalled $4,000 per mile. Nevertheless, the plaintiff was held bound by a subsequently enacted amendment which made the plaintiff liable to taxation during the 10-year period. Mr. Justice Holmes, writing for the United States Supreme Court, said (p. 385 et seq.): “ The first and main question, then, is whether the act of 1893 purported to make an irrevocable contract with such railroad as might thereafter comply with its terms. The question is pretty well answered by a series of decisions in this court. A distinction between an exemption from taxation contained in a special charter and general encouragement to all persons to engage in a certain class of enterprise, is pointed out in East Saginaw Manfg. Co. v. East Saginaw, 13 Wall. 373 * * *. In the case at bar, of course the building and operating of the railroad was a sufficient detriment or change of position to constitute consideration if the other elements were present. * * * No doubt the State expected to encourage railroad building, and the railroad builders expected the encouragement, but the two things are not set against each other in terms of bargain. * * * But this is a somewhat narrow and technical mode of discussion for the decision of an alleged constitutional right. The broad ground in a case like this is that, in view of the subject matter, the legislature is not making promises * * *. It simply indicates a course of conduct to be pursued, until circumstances or its views of policy change. It would be quite intolerable if parties not expressly addressed were to be allowed to set up a contract on the strength of their interest in and action on the faith of a statute, merely because their interest was obvious and their action likely, on the face of the law. What we have said is enough to show that in our opinion the plaintiff never had a contract ’
In Salt Co. v. East Saginaw (13 Wall. [80 U. S.] 373, supra) it was held that a law offering to all persons a bounty of 10 cents for every bushel of salt manufactured and tax exemption of property used for that purpose did not constitute a contract in such sense that it could not be repealed. The court distinguished the case from one where a corporate franchise, a contract between the State and the corporation, provided for tax exemption for the period of the charter or permanently (pp. 376-377). The court said (p. 379): “ General encouragements, held out to all persons indiscriminately, to engage in a particular trade or manufacture * * * are always under the legislative control, and may be discontinued at any time.” In *715 Cooley (op. cit., § 702, p. 1476) it is said: “ So a statute providing that all property, real and personal, of a value over a fixed sum which may subsequently be actually employed within the limits of the legislating jurisdiction for manufacturing purposes, shall be exempt from all general taxes for a designated period of years is not a contract in the sense that it cannot be repealed, but is a mere bounty law which may be repealed at any time.” (Citing in n. Welch v. Cook, 97 U. S. 541; emphasis added.)
In People ex rel. Iroquois Door Co. v. Knapp (186 App. Div. 172, affd. 227 N. Y. 592) the court said (p. 175):
11 Undoubtedly the State may by contract exempt a party from taxation and the obligation of such a contract if made becomes binding. But‘ it is never to be assumed that the State has, by any act, fettered its power of taxation in the future, unless it appears with irresistible clearness that the enactment was intended to be in the nature of a private contract as distinguished from a mere act of general legislation.’ ” (Citing cases; italics supplied.)
“ On an issue as to whether there exists a valid exemption based on contract so as to be irrevocable, every presumption will be indulged in favor of the power to tax and against the existence of the exemption.” (Cooley, op cit., p. 1479.)
Petitioners rely upon the following statement from People ex rel. New York Cent, & H. R. R. R. Co. v. Mealey (224 N. Y. 187, 196-197, affd. 254 U. S. 47): “ When the state through its legislature grants a franchise, privilege or exemption to a corporation either in the act incorporating it, or by other legislation followed by action of the corporation under or in reliance upon the grants so made, it constitutes a contract, based on a valuable consideration, the obligation of which can not be impaired by subsequent legislation.” Apart from the fact that this language was dictum, the holding being that the Legislature did have the right to repeal, the language used clearly applies only where the State contracts with a specific corporation by the act of incorporation or other statutes. The situation is different when the statute relied upon is general in its nature and available to any member of the public who chooses to avail himself of its provisions.
Not a single case has been cited by the attorneys for any of the petitioners in the 27 proceedings before the court where reliance upon a general statute of tax exemption has been held to create a contract for such exemption. Petitioners cite a statement in People v. Brooklyn Garden Apts. (283 N. Y. 373, *716 380) that: “ Exemptions from taxation which have induced action in reliance thereon, as the defendant may well contend that the exemption here has done, may not be invalidated by subsequent legislation (People ex rel. N. Y. C. & H. R. R. R. Co. v. Mealey, 224 K Y. 187; affd., 254 U. S. 47.) ” This language was dictum, the holding being that the imposition involved was a fee, and not a tax. The Mealey case (supra), which is cited in support of the dictum, has already been discussed. The language there used regarding a contract for tax exemption relates only to grants of tax exemption to specific corporations in their franchises, charters or in subsequent legislation, not to tax exemption granted generally in a statute applicable to any member of the public. It is important to note that in the Brooklyn Garden Apts, case, the statute before the court granted tax exemption to limited dividend corporations organized thereunder and the defendant was a corporation organized under said statute.- The situation, from a legal point of view, was, therefore, the same as if the defendant had been granted tax exemption in an act of incorporation limited to it alone. By incorporating under the statute which granted tax .exemption, the defendant entered into a contract with the State for such exemption (see Cooley, op. cit., p. 1479; People ex rel. New York Cent. & H. R. R. R. Co. v. Mealey, supra, pp. 196, 197).
Cases dealing with the right to revoke a building permit after the erection of a structure in reliance upon the permit have no application to the revocability of a tax exemption statute.
It is important to point out that the. court is restricted to consideration of the legal right of the city to amend the statute granting tax exemption and tax abatement. The morality of the city’s withdrawal of said privileges from those who expended substantial amounts in the belief that the city could not or would not repeal them is not properly the concern of the court. The purpose of the amendment was, it is to be borne in mind, to prevent a landlord who altered or improved a substandard dwelling from getting both rent increases, through decontrol, and tax exemption and tax abatement. “ While the legislation permitted the owners to reduce their cost, it was never its design that the landlords, in addition, would be entitled to receive thoroughly duplicating rent increases based upon the total expenditures for the same improvements.” (Matter of 225 E. 70th St. Corp. v. Weaver, 6 N Y 2d 197, 201.)
Whether the laudable purpose of the amendment justifies the taking away of tax exemption and abatement from those who made the alterations and improvements which the city had *717 sought to encourage, on the faith of those privileges, is a question exclusively for the city to decide.
It is not to be overlooked that petitioners must be deemed to have known when they made their alterations and improvements that, in the absence of a contract with the city, the latter had the right to revoke the privileges of tax exemption and tax abatement at any time. If they did not know, they are in no better position, for ignorance of the law is no excuse.
No attempt is made in the papers or briefs to support the contention that the order sought to be reviewed is not final.
For the reasons indicated, the cross motion to dismiss is denied, with leave to answer within 10 days from the service of a copy of this order, with notice of entry. The application made in the petition may not be disposed of until after the joinder of issue.