Aron Steuer, J.
This is one of 52 actions in which the material facts (with the one exception hereinafter noted) are similar' and in which it is .stipulated that the results will abide the decision in this action.
Petitioner is the owner of a multiple dwelling located at 438 East 77th Street. Prior to July, 1956 the building’s lack of modern conveniences would establish it as a substandard dwelling. In that month there was duly enacted section J41-2.4 of the Administrative Code of the City of New York. This statute provided that if alterations and repairs were made in buildings of the character of this one, the increase in the assessed valuation of the building due to such alterations and repairs should not be taxable for a period of 12 years. Petitioner made alterations and repairs in the building. All of these were done in compliance with regulations of the various city authorities and after audit the Department of Buildings, on January 7, 1959, certified that the work done complied with the statute and was entitled to a tax exemption on the sum of $25,222.
On January 19,1959 a new subdivision (subd. k) to the above-mentioned statute was purportedly enacted. This subdivision limits the application of the statute to buildings in which the rents are controlled by the State Residential Rent Law (L. 1946, ch. 274, as amd.). Petitioners’ premises are decontrolled.
When petitioners applied for tax abatement on May 6, 1959, the application was denied on the strength of said subdivision k. This action pursuant to article 78 (Civ. Prac. Act) to review the determination of the Tax Commission resulted. Petitioners’ grounds are twofold. The first is that subdivision in question *362 was never duly enacted and the second is that, even if so enacted, the section is unconstitutional. Prior hereto respondents moved to dismiss the petition at Special Term. The resulting decision was to the effect that the amendment was constitutional but that whether it was duly enacted was a factual question requiring a trial.
The attack on the enactment is that section 37 of the Charter of the City of New York was not complied with. The section requires that local laws in their final form must be on the desks of the councilmen for seven days exclusive of Sundays before being passed on. The petition alleges that the bill was first placed on the desks of the councilmen on December 16, 1958 and enacted on December 23, 1958. The contention on the trial was that the bill was placed there on December 17; while the proof substantiated the fact that printed copies were so placed on December 17. However mimeographed copies were so placed on the previous day, the 16th. Including the first and last days and excluding the intervening Sunday this would make seven days.
The exact words of the statute are “No local law shall be passed until it shall have been in its final form and upon the desks of the councilmen at least seven calendar days, exclusive of Sundays, prior to its final passage # The sense of the statute plus section 110 of the General Construction Law would exclude the day of passage. Hence the bill lay on the desks for only six days.
It is claimed by respondents that a substantial compliance is all that is necessary. (Commission of Public Charities v. Wortman, 255 App. Div. 241.) However, the Court of Appeals has long since declared that almost identical language is mandatory and compliance is required. (People ex rel. Hatch v. Reardon, 184 N. Y. 431, 439.)
Respondents at least entertained some doubt on this question, because on September 22, 1959 another law was enacted. This bill recognized the doubt cast upon the prior legislation and gave full force and effect to the earlier bill, making it effective as of its original date. If this bill is. valid legislation to the full extent of its tenor any question of the propriety of the original bill is obviated. Petitioners dispute this on several grounds.
Petitioners’ first argument points out that the city’s right to legislate in regard to real estate taxes derives from chapter 901 of the Laws of 1958 and the right so granted was limited in the statute to the period expiring June 1, 1959. This is *363 fixed as the expiration date of the right to “ adopt and amend local laws ” for this purpose. Unless authorized by State statute the city has no power to legislate in regard to tax exemptions. (N. Y. Const., art. IX, § 9.) The conclusion contended for is that no amendment was enacted on December 23 (the date of the original Local Law No. 14 of 1959 of City of New York) and no amendment was permissible on September 22, the date of the purported validation, so there is no change at all in the original exemption granted.
The syllogism is not perfect. Curative acts to correct irregularities in procedure are a well-known type of legislation and their permissibility is unquestioned within the restrictions that have grown up in constitutional practice. These restrictions are — they cannot cure a jurisdictional defect nor can they be effective if they purport to defeat vested rights. It is claimed that this statute violates the rule in both respects.
“ Jurisdictional ” in this connection means authority to act at all in regard to the subject matter. (See collation of authorities in 82 C. 'J. S., Statutes, § 430.) The defect was not jurisdictional. Whether or not a vested right is affected is the same question as is involved in the attack on the constitutionality of the statute and will be discussed in that connection. If the original statute was constitutional as to its subject matter, the curative statute is.
We now come to the question of the constitutionality of subdivision k. Specifically it provides that decontrolled buildings shall not be entitled to exemption. It further provides that where exemption was granted prior to July 1, 1958 it is not rescinded. Tax exemption granted on or after that date shall be discontinued upon the commencement of the first tax year following the tax year in which the building was decontrolled. Petitioners’ counsel has envisaged two distinct ways in which such a provision might be unconstitutional. The claim is first that it violates a contract between the city and petitioners and the second claim is that it denies the petitioners the equal protection of the laws.
The first question was raised on a motion to dismiss the petition. The eventual decision on that motion was that the papers submitted presented a question of fact as to whether the bill was validly enacted. The court did consider the question of constitutionality as raised on the motion, namely as a statute violating a contract, and determined that the legislation was constitutional. (Matter of Grossman v. Wagner, 20 Misc 2d 707.) Whether this constitutes the law of the case and binds *364 this court or whether the opinion on this point is dicta unnecessary to decision is academic. In any event this court agrees with the determination therein made.
The objection to the statute on the ground of denial of equal protection was neither raised nor discussed prior to the trial. The argument stems from the fact that owners who completed their alterations prior to July 1, 1958 receive tax exemption at the statutory rate, namely of the cost of the alterations annually for 12 years. It is claimed that this distinction is unfair and allows discrimination between owners who made similar improvements solely on the basis of the time the improvements were approved by the housing authorities. It is familiar learning that statutory distinctions are permissible to the extent that there are reasonable grounds for the distinction. It is quite apparent that the City Council enacted the legislation to conform to an amendment of section 5-h of the Tax Law enacted in another section of chapter 901 of the Laws of 1958 previously referred to. The State law was prompted by recognition of an unfair situation that had been created. That situation may be described as follows: Landlords who were subject to rent control had little inducement to improve their buildings as they could not get a return for the- investment involved in alterations. In place of such a return a decrease in outlay for taxes was offered in order to bring more housing on the market. This was the basis of the original section 5-h of the Tax Law. This law made no distinction between controlled and decontrolled dwellings. It was soon seen that an owner of decontrolled premises could and would get a return for improvements in increased rents. There was no public purpose in giving him any additional inducement. So the statute was amended to prevent the future granting of tax abatement. The amendment also provides for taking away the exemption from buildings controlled in 1958 but decontrolled thereafter.
The proposition represents a change in legislative thinking — namely that prior to July 1, 1958 it was desirable to induce alterations by this method in any building needing them, and thereafter only in controlled buildings. The change may be the result of a recognized change in conditions or a recognition that the original grant was excessive. In either event correction is permissible. And a distinction so created is not unreasonable.
It will be recalled that this action contains one feature that is not to be found in any of the other 51 cases to which these findings apply. The petitioners, upon learning of the passage of .subdivision k, requested the Temporary State Housing Eent *365 Commission to place their building under control. The request was unconditionally refused. This fact is not seen to affect the issues.
The conclusion is that the addition of subdivision k to section J41-2.4 is validly enacted by virtue of the curative statute, Local Law No. 408 of September 22,1959 and that the subdivision is constitutional.