OPINION OF THE COURT
Bentley Kassal, J.
ISSUE
The issue in this CPLR article 78 proceeding is which assessed valuation shall be used as the base figure in computing a "J51” real estate tax exemption (pursuant to Adminis *951 trative Code of City of New York, § J51-2.5; Real Property Tax Law, § 489)?
FACTS
On December 30, 1976, the petitioner acquired title to a 14-story loft building in Manhattan for $700,000, which premises had been assessed at $1,600,000 for the tax year 1976/1977 (commencing July 1, 1976). On the basis of the purchase price, the assessed valuation was reduced to $700,000 for 1977/1978.
On December 27, 1976, the petitioner began a major renovation to convert the premises to a class A multiple dwelling, with 179 apartments. The alteration was completed on November 15, 1977 and the property was then assessed at $3,200,000 for 1978/1979. Thereafter, the petitioner applied for the special tax exemption provided by section J51-2.5 of the Administrative Code for such conversions. The relevant section, subdivision b of section J51-2.5, states: "Any increase in the assessed valuation of real property shall be exempt from taxation * * * to the extent such increase results from the reasonable cost of (1) the conversion of any * * * other building or structure on such property to a class A multiple dwelling”.
Applying this provision, the city granted petitioner a tax exemption in the amount of $1,600,000 — the difference between the 1978/1979 assessed valuation of $3,200,000 (after the conversion) and the 1976/1977 assessed valuation of $1,600,000 (before the construction). Petitioner contends that for this formula the lower assessed valuation of $700,000 for the tax year 1977/1978 should have been employed which would result in a tax exemption of $2,500,000 ($3,200,000 — $700,000), representing the full amount of the increase in assessed valuation from the conversion.
Thus, the pertinent dates are:
Assessed
Tax Year Valuation Events
1976/1977 $1,600,000 December 27, 1976 Physical Construction
December 30, 1976 Purchase of Property
1977/1978 $ 700,000 November 15, 1977 Construction Completed
1978/1979 $3,200,000
LEGISLATIVE HISTORY
Although the "J51” program has been in effect for many *952 years and has resulted in hundreds of millions of dollars in tax exemptions and abatements ("Tax Break Program Is Found Poorly Run”, New York Times, April 7, 1978, p A12, col 1), the reported case law on the subject is minimal. The specific question raised on this motion — which assessed valuation shall be used as a base? — was considered by one court, but apparently has never been decided. (Matter of Mercer Assoc., NYLJ, March 22, 1979, p 7, col 1.)
Section 489 of the Real Property Tax Law, the enabling legislation which provides the foundation for "J51”, has a lengthy legislative history and has undergone numerous changes in reaching its current form. Originally developed to encourage rehabilitation and improvement of substandard dwellings, the law has steadily expanded its coverage to the present version which permits tax exemptions for conversions of commercial structures. Nevertheless, the purpose of the statute has remained constant in seeking to increase the supply of moderate rental housing with satisfactory standards.
While the Legislature provided the broad basis for such tax exemptions in section 489 of the Real Property Tax Law, it left to the municipal governments the implementation of the program. (State Housing Division Memoranda, NY Legis Ann, 1955, p 267.) As stated in the Governor’s Memorandum approving an earlier version "The conditions to be met to obtain such exemption or abatement, as well as the value of each, is left to the determination of the local [governing bodies which can adjust them to meet local] conditions and changing circumstances.” (NY Legis Ann, 1946, p 206.) The sponsor’s memorandum in support of this bill described the amount of tax exemption as the "[i]ncrease in value over that prior to conversion” (NY Legis Ann, 1946, p 213; emphasis added). While the language of subdivision b of section J51-2.5 of the Administrative Code does not expressly define the date upon which the value prior to conversion is to be established, the relevant date becomes clear by examining it in the context of the other provisions of section J51 (cf. Gaden v Gaden, 29 NY2d 80; McKinney’s Cons Laws of NY, Book 1, Statutes, §97).
DECISION
Under section J51-2.5 (subd a, par 2) of the Administrative *953 Code, for a building, already a multiple dwelling, to qualify for a "J51 exemption”, it must have been in existence before the alteration began and must be one "for which a valuation appears on the annual record of assessed valuation of the city for the ñscal year immediately preceding the commencement of such alterations and improvements” (emphasis added). Although this definition is somewhat ambiguous, the most logical interpretation is that it refers to the valuation appearing on the tax rolls at the time of the commencement of alterations and was not intended to apply to any other year, whether preceding or succeeding. This interpretation is confirmed by reference to a similar provision of the enabling legislation, which sets the date and figure to be used in determining the maximum limit for the exemption as the "valuation * * * appearing on the assessment rolls after the taxable status date [i.e., July 1] immediately preceding the commencement of such alterations and improvements” (Real Property Tax Law, § 489, subd 9).
Subdivision b of section J51-2.5 of the Administrative Code states that an exemption will be granted for "[a]ny increase in assessed valuation”. Harmonizing this provision with the language of paragraph 2 of subdivision a, as discussed above, and with the purpose of the legislation, it becomes apparent that the calculation of the increase in assessed valuation of any building, eligible under "J51”, must use the assessed value assigned to that property on the date of the physical start of construction as the basis for that purpose (cf. Matter of Anderson v Board of Educ., 46 AD2d 360; McKinney’s Cons Laws of NY, Book 1, Statutes, § 98).
Finally, this interpretation is also consistent with the policy of this State which dictates that a tax exemption statute be construed strictly against the taxpayer seeking its benefits (Matter of Association of Bar of City of N. Y. v Lewisohn, 34 NY2d 143) and that the burden of proving entitlement to an exemption rests on the one asserting it. (Matter of F. O. R. Holding Co. v Board of Assessors of Town of Clarkstown, 45 AD2d 875.) Petitioner has not met this burden.
Since there is a rational basis in law and fact for the determination by respondents, the motion is denied. (Matter of Pell v Board of Educ., 34 NY2d 222.)