OPINION OF THE COURT
Margaret Mary J. Mangan, J.
The issue before the court in this CPLR article 78 proceeding is whether a finding of reduction in the assessed valuation of real property in a tax certiorari proceeding can serve as a basis for proportionately reducing a “J51” exemption upon the same property in computing the refund due on overpayment of taxes.
The subject property at 600 W. 183rd St. in the Borough of Manhattan was altered and improved which resulted in an increase of $10,000 in its assessment. Because of the improvement a J51 exemption was granted in the sum of $10,000 to run for 12 years, commencing with the 1968/1969 tax year. On October 22, 1979, the order of this court was entered in a tax certiorari proceeding reducing the real estate tax assessment on this property for the *781 years 1975/1976 through 1978/1979. An application was made by the taxpayer petitioner for a refund. Although a refund was paid out by the Commissioner of Finance, petitioner claims that it is not enough. In the process of computing the refund, the J51 exemption was reduced for the years in which the tax assessments were reduced. As a consequence, petitioner brings this article 78 proceeding to compel payment of what it feels is the proper refund due.
It is respondent’s position that the $10,000 J51 exemption granted to petitioner in 1968/1969 should now be computed on the basis of a percentage of the assessed building valuation rather than on the specific dollar amount of $10,000. Thus, the city argues that the $10,000 exemption which represented 8.33% of the 1975/1976 building assessment ($120,000) should now be computed at 8.33% of the reduced building value ($107,000) or $8,916; this process repeats itself for the other tax years.
Section 489 of the Real Property Tax Law exempts from real property taxation increases in assessed valuation resulting from qualified rehabilitation of substandard dwellings, and conversion of certain commercial structures. To municipal government was left the task of determining the value of such exemptions as well as the conditions to be met to obtain them. (NY Legis Ann, 1955, p 267; 1946, p 206.) Pursuant to this authority section J51-2.5 of the Administrative Code of the City of New York was enacted. Section J51-2.5 of the Administrative Code as well as the rules and regulations governing tax exemption and abatement pursuant to section J51-2.5 state that the extent of a J51 exemption is determined by measuring the increase in assessed valuation resulting from qualified rehabilitation of certain dwellings on the basis of the reasonable cost of alterations and improvements. (Matter of Deull, 40 AD2d 803.)
The method by which the amount of the J51 exemption is determined is by computing the assessed valuation on the taxable status date immediately following the completion of the qualified rehabilitation and determining how much, if any, of the increase in assessed value resulted from rehabilitation. (Matter of 111 Fourth Ave. Assoc. v Finance Admin. of City of N. Y., 101 Misc 2d 950.) This is a matter *782 which is resolved apart from a tax certiorari proceeding. Should it later develop that the assessed valuation during the years in which the exemption is in effect is reduced, the exemption will not vary because it is not computed on the basis of a percentage of the assessed valuation, but on the basis of the specific dollar amount the market value of the property increased by virtue of the improvements made. (See Matter of 111 Fourth Ave. Assoc. v Finance Admin. of City of N.Y., supra.)
In 111 Fourth Ave. Assoc. (supra) the base year upon which a J51 exemption was computed was the subject of a tax certiorari proceeding which resulted in a substantial reduction in assessed valuation. The court disregarded the reduction in computing the J51 exemption because it determined that the assessed valuation initially recorded by the assessor was the proper point of reference in determining the amount of the exemption to be allowed.
In contrast to 111 Fourth Ave. Assoc. (supra), the manner in which the amount of the exemption was initially computed (tax year 1968/1969) is not in issue but the reasoning remains the same. If as in 111 Fourth Ave. Assoc. a reduction in assessed valuation does not affect the amount of the exemption during the year in which it was initially computed, then a fortiori a reduction during subsequent tax years as here should have no affect on the amount of the exemption.
Tax certiorari proceedings are independent of proceedings for a J51 tax exemption or abatement. The latter do not involve in the slightest the question of the correctness of the assessed valuation (Matter of Grossman v Wagner, 20 Misc 2d 707; see People ex rel. Ambroad Equities v Miller, 289 NY 339, 342), yet respondent argues that a J51 exemption should vary from year to year according to the outcome of tax certiorari proceedings. Neither the statutory history of nor the statutory language of section 489 of the Real Property Tax Law or subdivision b of section J51-2.5 of the Administrative Code which says that “any increase in the assessed valuation of real property shall be exempt from taxation” and “shall continue for a period of twelve years”, lend support to this view.
*783 The placing of assessed valuation upon real property is a yearly process and involves considerations that go to make market value, but arriving at the value of a J51 exemption is a one-time process that involves the narrow determination of increase in assessed value as a result of qualified rehabilitation. Once fixed it continues for 12 years. During this 12-year period, the assessed valuation of the property may fluctuate according to the vagaries of the marketplace and may be put into issue in a tax certiorari proceeding, but the question of the proper amount of a J51 exemption once determined in the base year should not be tied to the yearly review process which tax certiorari proceedings entail.
Respondent’s reliance on People ex rel. Blackburn and Religious Soc. of Friends v Barton (63 App Div 581) and Matter of St. Luke’s Hosp. v Boyland (12 NY2d 135) for the proposition that “the measure of the assessed value of a partial exemption is always based upon its proportionate relationship to the total assessed value” is misplaced. Both properties in these cases obtain their partial real estate tax exemptions under authority of the present day section 421 of the Real Property Tax Law.
The purpose of section 421 is to protect nonprofit organizations which are deemed beneficial to the public, necessary to the advancement of civilization and the promotion of the welfare of society. Subdivision 2 of section 421 mandates that the exemption should go no further than the portion of real property actually used for these purposes. Here, petitioner has obtained its partial exemption under the authority of section 489. Section 489 was designed to encourage physical improvements without fear on the part of the owner of a tax increase. It is specifically designed to offset any increase in the assessment by the assessor for such improvements in determining whether the market value of the property has been enhanced regardless of actual costs of rehabilitation.
In contrast to section 421, section 489 is not concerned with the percentage use to which real property is being put consonant with the aims of the statute, but with the extent the market value of the property is enhanced. Consequently, it would be inappropriate to measure a section *784 489-J51 exemption by the standard employed to measure a section 421 exemption. Not only do the aims of the statutes differ but section 489, unlike section 421, contains no specific authorization for a proportionate valuation of exemption.
Lastly, although tax exemption statutes should be construed strictly against the taxpayer seeking the benefit of the exemption, a J51 exemption should be interpreted to encourage conversions. (Martell's Rest. Corp. v Housing & Dev. Admin. of City of N. Y., 64 Misc 2d 991, affd 37 AD2d 691.) To reduce the exemption once its value has been set by the assessor would not further this end, but would penalize aggrieved taxpayers who perforce had to institute separate proceedings to obtain relief from overassessments upon their properties.
Accordingly, petition is granted insofar as respondent is directed to pay the balance of the real estate tax refund due plus interest, computed without diminution in the amount of the J51 exemption, which is a fixed sum not to be proportionately reduced by reference to the finding of reduction in assessed building value in the instant tax certiorari proceedings.