OPINION OF THE COURT
Margaret Mary J. Mangan, J.
Petitioner moves for summary judgment on the grounds that the increase in the building assessment on its property located at 127-29 Prince Street (Block 515, Lot 37) for the 1981/1982 tax year is contrary to subdivision 9 of section 489 of the Real Property Tax Law.
Section 489 of the Real Property Tax Law is the enabling legislation for section J51-2.5 of the Administrative Code of the City of New York, commonly referred to as the J51 law. It confers three benefits for the rehabilitation of substandard dwellings. The first is an abatement which is used to partially offset existing real estate taxes on the property. The second is an exemption on assessed building valuation, which runs, with exceptions not pertinent here, *101 for a period of 12 years, and is computed on the basis of the specific dollar amount the market value of the property increased by virtue of the improvements made. (Matter of 600 West 183rd St. Corp. v Tishelman, 108 Misc 2d 780; see Matter of 111 Fourth Ave. Assoc, v Finance Admin, of City of N. Y., 101 Misc 2d 950.) The third benefit is the one at issue, to wit, building assessments are not to be increased.
The statutory authority for the third benefit is subdivision 9 of section 489 of the Real Property Tax Law which states: “During the period of * * * exemptions the assessments on * * * land and dwelling after * * * alterations and improvements, exclusive of the increase in valuation which is exempted, shall not exceed the valuation of the previously existing dwelling appearing on the assessment rolls after the taxable status date immediatley preceding the commencement of such alterations and improvements plus the value of the land and any improvements other than those made under the provisions of this section.”
Without subdivision 9 of section 489, the other J51 tax benefits of abatement and exemption would be rendered worthless by any corresponding rise in assessments, thereby defeating the essential purpose of the J51 program, to encourage rehabilitation. Any other narrow or limited statutory interpretation should not be countenanced (Matter of Martel's Rest. Corp. v Housing & Dev. Admin, of City of N. Y., 64 Misc 2d 991, affd 37 AD2d 691). The amount of financing that banks and other lenders have been willing to extend has been in reliance on a constant tax burden, over a period of 12 years. If the benefits of J51 are eliminated, then funding for future rehabilitation will suffer the program.
The subject property is a loft building converted to a residential co-operative. An application for J51 tax benefits was made and approved in January, 1979. For the tax year 1979/1980 an exemption was granted in the amount of $27,000 for the increase in value in the residential space due to alteration work.* In the subsequent tax year, 1980/1981, the building assessment rose from $95,000 to $261,000. Although petitioner contends that this increase *102 in building assessment was in contravention of subdivision 9 of section 489, it filed no protest since the assessors, upon application by petitioner, increased the amount of the J51 exemption to $108,000, matching dollar for dollar the rise in assessed building value. The net result was that the tax benefit remained the same as if the building assessment had never been increased. For 1981/1982, the tax year in dispute, the assessed building value remained constant at $261,000, but the exemption was reduced to $42,000 from $108,000 in accordance with a newly announced policy of the city. The city’s policy would be to henceforth interpret subdivision 9 of section 489 as authority for initially computing a J51 exemption as a percentage of assessed valuation and that it would only be that percentage which would be immune from any subsequent rise in building assessments.
Subdivision 9 of section 489 and predecessor legislation has been in existence since 1946. (See L1960, ch 968, § 1; L 1946, ch 321, § 1.) The city would have this court believe that for 34 years it has labored under a misinterpretation of law; that subdivision 9 of section 489 does not mean what it says, viz., building assessments will not rise during the 12-year period in which a J51 exemption is in effect. In support of its percentage analysis approach, the city does not proffer one scintilla of legislative history to establish that the intent of the Legislature was anything other than the plain meaning of the statute. Instead, what has been shown is that in an attempt to raise^revenue, the city, without legislative or judicial authority, seeks to alter and diminish the tax benefit of the petitioner.
The impetus for the change in the policy of the city apparently came from an intradepartmental memorandum, dated August 9, 1978, from counsel to the Tax Commission to the then Deputy Commissioner of the Department of Finance. In it, counsel stated:
“A literal reading of this subdivision (§ 489(9)) would appear to mandate that in calculating the initial assessment on the dwelling following the alteration and improvement, the assessor is limited to the assessed valuation which appears on the assessment roll immediately *103 preceding the commencement of such alterations and improvements * * *
“It must be noted, however, that ‘equalization’, or increases in value of the land itself can * * * be made. And, in subsequent years, there should also be equalization of improvements other than those made under the provisions of this statute where the assessor determines that such equalization is appropriate.” (Emphasis supplied.)
The recommendation of counsel to the Tax Commission was then adopted by the City of New York Department of Investigation in its January, 1981 report entitled, Post Audit Implementation: The J51 Tax Exemption — Tax Abatement Program (p 30): “The Tax Commission Counsel has indicated that ‘a revised method of calculating J51 exemption increases based on assessor’s equalization increases has been developed’. This method, which will exempt a fractional proportion of the equalization increase based on the relationship of the tax exemption to the total assessed value, will ‘enable the City to obtain increased tax revenues that result from improved economic conditions that affect these exempt properties”.
Section 489 of the Real Property Tax Law does not define . the tax exemption it confers as a proportion of either assessed valuation or any increase in assessed valuation, and does not provide authority to the city to so define the exemption. Whenever State and local legislatures intend a tax exemption to be computed as a proportion of assessed valuation, they have said so explicitly (see, e.g., Real Property Tax Law, § 421-a; Local Laws, 1979, No. 49 of City of New York, Administrative Code, ch 56, §§ 1301-1309). The absence of an explicit statement in the Administrative Code together with the plain meaning of subdivision 9 of section 489 prohibit the conclusion that the Legislature intended that the J51 exemption be a proportion of assessed value. The language is plain. There is no ambiguity or occasion to resort to rules of statutory construction (Matter of Hardecker v Board of Educ., 180 Misc 1008, affd 266 App Div 980, affd 292 NY 584).
The court is not unmindful of the current public debate over the proper extent and nature of the J51 program, particularly in Manhattan. However, when cutbacks and *104 restrictions in the program were considered necessary, the Legislature has acted. In 1979, the City Council reduced the amount of abatement on property taxes for conversions of nonresidential improvements to residential dwellings in Manhattan. Similarly, here, if substantive restrictions are to be imposed on the scope and extent of subdivision 9 of section 489, presently an integral and necessary part of the J51 program in all five boroughs, it must be done by the Legislature, not by the unilateral act of the Finance Administrator, who is not even acting pursuant to any administrative regulation.
Accordingly, summary judgment is granted.

 The property in question has commercial space which represents approximately 13% of building area not eligible for J51 exemption and for which no claim is asserted.